Slip Op. 24-20

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

ZHEJIANG AMERISUN
TECHNOLOGY CO., LTD.,

    Plaintiff,

v.

UNITED STATES,

    Defendant,

and

BRIGGS & STRATTON, LLC,

    Defendant-Intervenor.

</td><td>

Before: Jennifer Choe-Groves, Judge

Court No. 23-00011

</td></tr>
</table>

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final scope ruling that R210-S engines are included in the antidumping and countervailing duty orders on certain vertical shaft engines between 99cc and up to 225cc and parts thereof from the People's Republic of China.]

Dated:  February 20, 2024

Brittney R. Powell and Lizbeth R. Levinson, Fox Rothschild LLP, of Washington, D.C., for Plaintiff Zhejiang Amerisun Technology Co., Ltd.

Claudia Burke, Deputy Director, and Kyle S. Beckrich, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel on the brief was JonZachary Forbes, Attorney,

Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Daniel L. Schneiderman and Stephen Orava, King & Spalding LLP, of Washington, D.C., for Defendant-Intervenor Briggs & Stratton, LLC.

Choe-Groves, Judge:  Plaintiff Zhejiang Amerisun Technology Co., Ltd. ("Plaintiff" or "Zhejiang Amerisun") is a foreign exporter of lawn mowers from the People's Republic of China ("China").  Plaintiff challenges the U.S. Department of Commerce's ("Commerce") final scope ruling that the R210-S engine manufactured by Chongqing Rato Technology Co., Ltd. ("Chongqing Rato") is included in the antidumping and countervailing duty orders on certain vertical shaft engines between 99cc and up to 225cc and parts thereof from China. Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof, from the People's Republic of China: Scope Ruling on Modified Vertical Shaft Engines (Dec. 22, 2022) ("Final Scope Ruling"), PR 25[1]; see Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof From the People's Republic of China, 86 Fed. Reg. 23,675 (May 4, 2021) (antidumping and countervailing duty orders) ("Orders").

The crux of this case is whether Chongqing Rato's R210-S horizontal engines fall within the scope of the Orders that cover vertical engines.  Plaintiff

---

[1] Citations to the administrative record reflect the public record ("PR") document numbers filed in this case.  ECF No. 32.

argues that the R210-S engines contain a newly designed horizontal shaft engine that should be deemed outside the scope of the Orders. The Government contends that Commerce's scope ruling, which determined that the horizontal shaft engine was equivalent to a "modified vertical" shaft engine and thus fell within the scope of the Orders, should be sustained. At oral argument, discussions with the Parties revealed that the horizontal shaft engine design is new to the market, and thus a horizontal engine was not contemplated when the Orders were drafted to cover vertical engines. See Oral Arg. at 34:30–35:59, Dec. 11, 2023, ECF No. 35.

Before the Court is Plaintiff's Motion for Judgment on the Agency Record ("Plaintiff's Motion"). Pl.'s Mot. J. Agency R. ("Pl.'s Mot."), ECF No. 24; Pl.'s Mem. Points Authorities Supp. Pl.'s 56.2 Mot. J. Agency R. ("Pl.'s Br."), ECF No. 24-2. Defendant United States ("the Government" or "Defendant") and Defendant-Intervenor Briggs & Stratton, LLC ("Defendant-Intervenor," "Briggs & Stratton," or "Petitioner") oppose Plaintiff's Motion. Resp. Br. Def.-Interv. Opp'n Pl.'s Mot. J. Agency R. ("Def.-Interv.'s Resp."), ECF No. 25; Def.'s Resp. Pl.'s R. 56.2 Mot. J. Agency R. ("Def.'s Resp."), ECF No. 26. Plaintiff filed its reply. Pl.'s Reply Br. Supp. R. 56.2 Mot. J. Agency R. ("Pl.'s Reply"), ECF No. 30.

For the reasons discussed below, the Court remands Commerce's Final Scope Ruling as unsupported by substantial evidence and not in accordance with law.

**BACKGROUND**

On May 4, 2021, Commerce issued antidumping and countervailing duty orders for certain vertical shaft engines between 99cc and up to 225cc, and parts thereof from China. See Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof From the People's Republic of China, 86 Fed. Reg. at 23,675.

On August 8, 2022, Briggs & Stratton filed a scope ruling request to determine whether Chongqing Rato's R210-S "modified vertical," single-cylinder, air-cooled, non-road, internal combustion engines used to power lawn mowers, with a horizontal crankshaft connected to a right-angle gearbox, are covered by the scope of the Orders. Letter from King & Spalding LLP to Commerce, re: Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts Thereof from China[:] Request for Scope Ruling Regarding Certain Modified Vertical Shaft Engines (Aug. 8, 2022) ("Petitioner's Scope Ruling Request"), PR 1–10.

On August 26, 2022, Commerce initiated the scope inquiry. Mem. re: Initiation Memo [for] Modified Vertical Shaft Engines (Aug. 26, 2022), PR 16. The Parties filed their respective comments. Letter from Commerce & Finance Law Offices to Commerce, re: Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts Thereof from China: Comments on Scope Ruling Application Regarding Certain Modified Vertical Shaft Engines (Sept. 26, 2022) ("Plaintiff's

Administrative Comments"), PR 12; Letter from King & Spalding LLP to

Commerce, re: Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts

Thereof from China[:] Petitioner's Response Comments (Oct. 11, 2022)

("Petitioner's Rebuttal Comments"), PR 21.  Commerce issued the Final Scope

Ruling on December 22, 2022, determining that Chongqing Rato's R210-S engines

are modified vertical shaft engines included in the scope of the Orders.  See Final

Scope Ruling.  Plaintiff filed this timely action.  See Summons, ECF No. 1;

Compl., ECF No. 9.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the

Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi), and 28 U.S.C.

§ 1581(c).  The Court will hold unlawful any determination found to be

unsupported by substantial evidence on the record or otherwise not in accordance

with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.      Commerce's Scope Determination

The descriptions of merchandise covered by the scope of an antidumping or

countervailing duty order must be written in general terms, and questions may arise

as to whether a particular product is included within the scope of an order.  See 19

C.F.R. § 351.225(a).  When such questions arise, Commerce's regulations direct it

to issue scope rulings that clarify whether the products are in scope or out of scope.

Id.  Commerce is guided by case law and agency regulations in their scope rulings.

See Meridian Prods., LLC v. United States ("Meridian Prods."), 851 F.3d 1375,

1381 (Fed. Cir. 2017); 19 C.F.R. § 351.225.

### A.    Scope of the Orders

Commerce's inquiry must begin with the relevant scope language.  See, e.g.,

OMG, Inc. v. United States, 972 F.3d 1358, 1363 (Fed. Cir. 2020).  If the scope

language is unambiguous, "the plain meaning of the language governs."  Id.  If the

language is ambiguous, however, Commerce interprets the scope with the aid of

the sources set forth in 19 C.F.R. § 351.225(k)(1).  Meridian Prods., 851 F.3d at

1382.  If the (k)(1) sources do not dispositively answer the question, Commerce

may consider the (k)(2) factors under 19 C.F.R. § 351.225(k)(2).  Id.

Commerce may consider the following interpretive sources under 19 C.F.R.

§ 351.225(k)(1) to determine whether merchandise is covered by the scope of an

order:

(A) The descriptions of the merchandise contained in the petition
    pertaining to the order at issue;

(B) The descriptions of the merchandise contained in the initial
    investigation pertaining to the order at issue;

(C) Previous or concurrent determinations of the Secretary, including
    prior scope rulings, memoranda, or clarifications pertaining to both

the order at issue, as well as other orders with same or similar language as that of the order at issue; and

(D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

19 C.F.R. § 351.255(k)(1). Secondary interpretive sources include any other determinations of the Secretary or the Commission not identified above, rulings or determinations by U.S. Customs and Border Protection ("Customs"), industry usage, dictionaries, and any other relevant record evidence. Id. If there is a conflict between these secondary interpretive sources and the primary interpretive sources of this section, the primary interpretive sources will normally govern in determining whether a product is covered by the scope of the order at issue. Id.

The scope language of the Orders in this case states in relevant part:

The merchandise covered by these orders consists of spark-ignited, non-road, vertical shaft engines, whether finished or unfinished, whether assembled or unassembled, whether mounted or unmounted, primarily for walk-behind lawn mowers. Engines meeting this physical description may also be for other non-hand-held outdoor power equipment, including but not limited to, pressure washers. The subject engines are spark ignition, single-cylinder, air cooled, internal combustion engines with vertical power take off shafts with a minimum displacement of 99 cubic centimeters (cc) and a maximum displacement of up to, but not including, 225cc. Typically, engines with displacements of this size generate gross power of between 1.95 kilowatts (kw) to 4.75 kw.

Engines covered by this scope normally must comply with and be certified under Environmental Protection Agency (EPA) air pollution controls title 40, chapter I, subchapter U, part 1054 of the Code of

Federal Regulations standards for small non-road spark-ignition engines and equipment. Engines that otherwise meet the physical description of the scope but are not certified under 40 CFR part 1054 and are not certified under other parts of subchapter U of the EPA air pollution controls are not excluded from the scope of these proceedings. Engines that may be certified under both 40 CFR part 1054 as well as other parts of subchapter U remain subject to the scope of these proceedings.

Certain small vertical shaft engines, whether or not mounted on non-hand-held outdoor power equipment, including but not limited to walk-behind lawn mowers and pressure washers, are included in the scope. However, if a subject engine is imported mounted on such equipment, only the engine is covered by the scope. Subject merchandise includes certain small vertical shaft engines produced in the subject country whether mounted on outdoor power equipment in the subject country or in a third country. Subject engines are covered whether or not they are accompanied by other parts.

For purposes of these orders, an unfinished engine covers at a minimum a sub-assembly comprised of, but not limited to, the following components: Crankcase, crankshaft, camshaft, piston(s), and connecting rod(s). Importation of these components together, whether assembled or unassembled, and whether or not accompanied by additional components such as a sump, carburetor spacer, cylinder head(s), valve train, or valve cover(s), constitutes an unfinished engine for purposes of these orders. The inclusion of other products such as spark plugs fitted into the cylinder head or electrical devices (*e.g.*, ignition coils) for synchronizing with the engine to supply tension current does not remove the product from the scope. The inclusion of any other components not identified as comprising the unfinished engine subassembly in a third country does not remove the engine from the scope.

Specifically excluded from the scope of these orders are "Commercial" or "Heavy Commercial" engines under 40 CFR 1054.107 and 40 CFR 1054.135 that have (1) a displacement of 160cc or greater, (2) a cast iron cylinder liner, (3) an automatic compression release, and (4) and a muffler with at least three chambers and volume greater than 400cc.

See Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts

Thereof From the People's Republic of China, 86 Fed. Reg. at 23,676–77.

### B.    Description of Merchandise

Plaintiff is a foreign exporter of lawn mowers from China that employs the

R210-S engine in its PowerSmart brand lawn mowers.  See Petitioner's Scope

Ruling Request at 4.  From the outset of the scope ruling request, the domestic

producer Briggs & Stratton described Chongqing Rato's R210-S engine as a

"modified vertical shaft engine" rather than a horizontal shaft engine.  Id. at 3–4.

Commerce echoed this language when it provided the following description in the

scope ruling:

> The merchandise subject to this scope inquiry is a modified vertical
> shaft engine, such as the modified R210-S engine manufactured by
> Chongqing Rato.  A modified vertical shaft engine is a single-cylinder,
> air-cooled, spark-ignited, non-road, internal combustion engine used
> to power lawn mowers, with a horizontal crankshaft connected to a
> right-angle gearbox.  The gearbox of the engine redirects power from
> the crankshaft to a vertical power take off shaft that powers the blades
> of the lawn mower.

Final Scope Ruling at 3.

### C.    Commerce's Determination

To determine if the R210-S engines were covered by the scope of the

Orders, Commerce examined the plain language of the scope and the (k)(1) sources

consisting of the Petitioner's Scope Ruling Request, the underlying ITC Report,

and the Petition.  See Petitioner's Scope Ruling Request at Att. 15, Small Vertical Shaft Engines from China, USITC Pub. 5185, Inv. Nos. 701-TA-643, 731-TA-1493 (Aug. 25, 2008) ("ITC Report"); Petitioner's Scope Ruling Request at Att. 7, Petitions for the Imposition of Antidumping and Countervailing Duties, Certain Vertical Engines Between 99cc and Up to 225cc, and Parts Thereof, from the People's Republic of China, Volume I: General Information and Injury (Mar. 18, 2020) ("Petition").

Commerce first determined that the R210-S engines were "spark-ignited, single-cylinder, air-cooled, internal combustion engines between 99cc and 225cc that generate 1.95 kw to 4.75 kw of gross power."  Final Scope Ruling at 7 (citing Petitioner's Scope Ruling Request at Att. 3 (certification from the California Air Resources Board ("CARB")) and Att. 5 (data from the Environmental Protection Agency ("EPA") regarding small non-road spark-ignition engines)).  Commerce then determined that the engine's horizontal crankshaft was attached to a right-angle gearbox, which redirected power from a horizontal orientation to a vertical orientation through a downward vertical shaft to the blades of the lawn mower, resulting in a vertical "power take off shaft."  Id. at 7–8.  Commerce determined that the horizontal crankshaft, right-angle gearbox, and vertical downward shaft comprised a single engine unit.  Id.

The PowerSmart manual includes a schematic of the R210-S engine, which is divided into individual parts with descriptions and is depicted below.  The manual indicates that the part identified as item 1 in the schematic is the engine and the parts identified as items 2 to 19 make up the gearbox.  Petitioner's Scope Ruling Request at 8 (figure 2); see also id. at Att. 6 at 21–22.



During oral argument, the Government clarified that Commerce determined that items 1 through 19 make up the modified vertical shaft engine, with item 1 (the engine) plus items 2 to 19 (the gearbox) comprising one single engine unit.  Oral Arg. at 49:55–50:15.  Plaintiff contended, on the other hand, that item 1 was

the only engine unit and constituted a horizontal shaft engine, and items 2 to 19

(the gearbox) were not part of the engine.  Id. at 11:57–14:58.

This interpretation is critical to Commerce's scope ruling: rather than

viewing the R210-S as a horizontal engine, Commerce considered the horizontal

engine *plus* the vertical gearbox together as one "single engine unit" in order to

determine that there was a vertical component of the product that fell within the

scope of the vertical engine Orders.

After relying on the plain scope language in the Orders, the Government

argued that Commerce examined the (k)(1) sources of the Petition, underlying ITC

Report, and articles from Wikipedia and Pennsylvania State University to support

its determination that the modified vertical shaft engine had a vertical orientation

through its vertical "power take off shaft" and followed the primary use outlined in

the scope language.  Final Scope Ruling at 8–9.

The Parties use different terminology for the components to describe how

the R210-S engine operates with the blades of the lawn mower.  For the purposes

of this opinion, the Court refers to the two shafts at issue as the horizontal

crankshaft and the vertical drive shaft.  The vertical drive shaft is referred to as the

"vertical power take off shaft" and "vertical downward shaft" by Commerce, as the

"vertical transmission shaft" by Plaintiff, and as the "vertical drive shaft" by

Defendant-Intervenor; the horizontal crankshaft is referred to as the "horizontal

power take off shaft" by Plaintiff.  See Final Scope Ruling; Pl.'s Br.; Def.'s Resp.;

Def.-Interv.'s Resp.; Pl.'s Reply.

### 1.      Whether the R210-S Engine Includes the Gearbox and Vertical Drive Shaft

Plaintiff first challenges Commerce's determination that the right-angle

gearbox and the vertical drive shaft are part of the R210-S engine and are therefore

included within the scope of the Orders.  Plaintiff contends that the gearbox and

vertical drive shaft are not part of the engine.  See Pl.'s Br. at 8–9; Pl.'s Reply at

4–7.

Commerce relied on the Petitioner's Scope Ruling Request in determining

that "[m]odified vertical shaft engines contain a horizontal crankshaft . . . attached

to a right-angle gearbox, which redirects power from a horizontal orientation to a

vertical orientation through a downward shaft to the blades of the lawn mower."

Final Scope Ruling at 7 (citing Petitioner's Scope Ruling Request at 3–4, 7–13,

23–24).  The Petitioner's Scope Ruling Request contained a description of the

physical characteristics of the R210-S engine:

> The R210-S has a horizontal crankshaft, but the engine has been
> modified to include a right-angle gearbox that redirects power from a
> horizontal to a vertical orientation.  Put simply, the horizontal
> crankshaft turns a gear, and that gear then turns a vertical take off shaft.
> As modified with the gearbox, the shaft comes out the bottom (rather
> than from the side) of the engine.

Petitioner's Scope Ruling Request at 4.  Additional technical descriptions

were included in Attachments 1–3 and 5–6.  See id. at Att. 1 (picture of lawn

mower marketed on Walmart website), Att. 2 (picture of lawn mower

marketed on PowerSmart website), Att. 3 (certification from CARB), Att. 5

(data from EPA regarding small non-road spark-ignition engines), and Att. 6

(PowerSmart manual).

Commerce cited evidence provided by Petitioner to show that the

right-angle gearbox and vertical drive shaft are considered parts of the R210-

S engine, rather than parts of the lawn mower.  Final Scope Ruling at 8

(citing to Petitioner's Scope Ruling Request at 8–13).  As shown above, the

PowerSmart manual includes a schematic of the R210-S engine.  The

manual indicates that the part identified as item 1 is the engine and the parts

identified as items 2 to 19 make up the gearbox.  Petitioner's Scope Ruling

Request at 8 (figure 2); see also id. at Att. 6 at 21–22.

Commerce also cited to Figures 3, 4, and 6 to 8 in the Petitioner's

Scope Ruling Request.  Figures 3 and 4 show photographs of the box

packaging of the lawn mower and the lawn mower itself when sold.  Id. at 9.

Commerce cited to Figures 6 to 8 as evidence that the right-angle gearbox

works in tandem with the engine, in support of its determination that the

gearbox can reasonably be determined to be attached to, and part of, the

engine.  The Court observes that Figure 6 is a photograph of the gearbox

without its cover.  Id. at 11.  Figure 7 is a photograph of the engine without

the gearbox attached to it and Figure 8 is a photograph of the bottom of the

lawn mower, showing that the vertical drive shaft is off-center with the

removal of the gearbox, along with demonstrating that there is a pulley

system added to direct power from the vertical drive shaft to a centralized

blade hub and through an additional belt to the wheels.  Id. at 12–13.

The Court observes that the schematic in the PowerSmart manual (as

shown above) demonstrates that item 1 is a horizontal shaft engine, and

items 2 to 19 make up the gearbox.  This supports Plaintiff's position, and is

contrary to Commerce's scope ruling that the engine incorporates the

gearbox.  This example of record evidence from the Petitioner's Scope

Ruling Request therefore does not support Commerce's scope determination.

Commerce stated in the Final Scope Ruling that because the Orders do not

include an exhaustive list for the components necessary for an engine to be

covered, the scope language does not preclude a gearbox connected to a shaft from

being considered an integrated part of the R210-S engine.  Final Scope Ruling at 8.

Commerce explained that:

> Furthermore, we find that the scope merely enumerates the minimum
> components that must be included for a machine to be considered an
> engine, rather than providing an exhaustive list.  Thus, there is nothing

in the language of the scope that precludes a gearbox connected to a shaft from being considered an integrated part of an engine.

Id.

Commerce's explanation is inconsistent with well-established legal precedent regarding scope rulings. The Court of Appeals for the Federal Circuit ("CAFC") has held that "[s]cope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." Duferco Steel, Inc. v. United States ("Duferco"), 296 F.3d 1087, 1089 (Fed. Cir. 2002). Significantly, Commerce's position that the scope language's silence permits Commerce to interpret the subject merchandise within the scope of the Orders is the opposite of the principle set forth in Duferco. The Court observes that gearboxes are not mentioned in the scope language. The Court concludes that because (1) the scope language does not specify that a gearbox connected to a shaft is part of the engine or any language that reasonably suggests such a result, and (2) Commerce's interpretation is contrary to well-established legal precedent, Commerce's determination that the R210-S engine includes the right-angle gearbox and vertical drive shaft is neither supported by substantial evidence nor in accordance with law.

## 2.        Power Transmission from Secondary Shaft

Plaintiff contends that Commerce's scope determination is not in accordance with law or supported by substantial evidence because the Orders cover only engines with a vertical "power take off shaft," but the R210-S engine has a horizontal "power take off shaft." See Pl.'s Br. at 4–11. Plaintiff does not challenge the ambiguity of the scope language or Commerce's determination that the R210-S engines are "spark-ignited, single-cylinder, air-cooled, internal combustion engines between 99cc and 225cc that generate 1.95 kw to 4.75 kw of gross power." See id. Plaintiff only contests Commerce's determination that the "power take off shaft" was "modified vertical" rather than horizontal.

The Government and Defendant-Intervenor urge the Court to sustain Commerce's scope ruling because they argue that Commerce determined reasonably that the R210-S engine fell within the scope of the Orders based on record evidence and proper (k)(1) sources. Def.'s Resp. at 4; Def.-Interv.'s Resp. at 6–11.

Commerce defines a "power take off shaft" as: "[T]he mechanism through which power is transmitted from the engine to an attached implement (such as a blade), and it can be a secondary drive shaft (i.e., a shaft connected via a gearbox (or transmission) to the crankshaft)." Final Scope Ruling at 8. Plaintiff challenges the second part of Commerce's definition of "power take off shaft," which states

that "it can be a secondary drive shaft (*i.e.*, a shaft connected via a gearbox (or transmission) to the crankshaft)." Plaintiff contends that Commerce's scope ruling is not supported by substantial evidence because Commerce cited unreliable evidence, such as Wikipedia articles, and irrelevant evidence that was not specific to engines used for lawn mowers. Pl.'s Br. at 6–7.

Plaintiff challenges Commerce's determination that the vertical drive shaft can be considered a "power take off shaft," based on Commerce's definition of a "power take off shaft" as a "secondary drive shaft" that can be connected to the engine via a gearbox or any other secondary drive shaft. Id. at 7. Plaintiff disagrees with this definition. Id.

To support its determination, Commerce relied on two articles from Wikipedia and one academic article for its definition of "power take off shaft." Final Scope Ruling at 8 n.46; see Petitioner's Scope Ruling Request at Atts. 16b, 16c, 17. The Court observes that none of these articles relied on by Commerce discuss a "power take off shaft" in the context of walk-behind lawn mowers or provide specific information as to how a "power take off shaft" can be a "secondary drive shaft," such as a shaft connected via a gearbox (or transmission) to the crankshaft.

As a preliminary matter, the Court rejects the reliability of Wikipedia articles as authoritative evidence deserving of judicial notice. See Petitioner's

Scope Ruling Request at Atts. 16a, 16b, 16c.  Wikipedia describes itself as "a free encyclopedia, written collaboratively by the people who use it," and "[a]nyone can edit almost every page; just find something that can be improved and make it better."[2]  Wikipedia articles do not contain the editorial controls of other published work and may be manipulated by anyone.

The U.S. Court of International Trade has discussed its concerns about Wikipedia due to its unreliability as an evidentiary source.  See BP Prod. N. Am. Inc. v. United States, 34 CIT 676, 681, 716 F. Supp. 2d 1291, 1295 n.10 (2010) ("Based on the ability of any user to alter Wikipedia, the court is skeptical of it as a consistently reliable source of information.  At this time, therefore, the court does not accept Wikipedia for purposes of judicial notice.").  Courts have expressed concerns over Wikipedia's lack of editorial controls:

> A review of the Wikipedia website reveals a pervasive and, for our purposes, disturbing series of disclaimers, among them, that: (i) any given Wikipedia article "may be, at any given moment, in a bad state: for example it could be in the middle of a large edit or it could have been recently vandalized"; (ii) Wikipedia articles are "also subject to remarkable oversights and omissions"; (iii) "Wikipedia articles (or series of related articles) are liable to be incomplete in ways that would be less usual in a more tightly controlled reference work"; (iv) "[a]nother problem with a lot of content on Wikipedia is that many contributors do not cite their sources, something that makes it hard for the reader to judge the credibility of what is written"; and (v) "many

---

[2] Introduction to Wikipedia, https://en.wikipedia.org/wiki/Help:Introduction_to_Wikipedia (last visited Feb. 19, 2024).

articles commence their lives as partisan drafts" and may be "caught up
in a heavily unbalanced viewpoint."

Campbell ex rel. Campbell v. Secretary of Health and Human Servs., 69 Fed. Cl.

775, 781 (2006).  Other courts have also expressed their concerns about the

dangers of relying on Wikipedia as an authoritative source.  See, e.g., Badasa v.

Mukasey, 540 F.3d 909, 910 (8th Cir. 2008); Bing Shun Li v. Holder, 400 F. App'x

854, 857–58 (5th Cir. 2010).

Commerce has even rejected Wikipedia as evidence in cases appealed to the

U.S. Court of International Trade.  See Shandong Rongxin Imp. & Exp. Co. v.

United States, 41 CIT __, __, 203 F. Supp. 3d 1327, 1342 (2017) ("Commerce

discounted the Wikipedia article because of its vagueness and lack of an

authoritative citation. . . .  The court further notes that . . . Wikipedia, is often an

unreliable evidentiary source."); Xiamen Int'l Trade & Indus. Co. v. United States,

37 CIT 1724, 1729, 953 F. Supp. 2d 1307, 1314 (2013) ("Commerce dismissed

XITIC's Wikipedia entry as unreliable because it contained no citations to outside

sources supporting the article's definitions.").  It is remarkable that Commerce has

rejected Wikipedia as a reliable source of evidence for over a decade, and here

Commerce cites Wikipedia as evidence before this Court.  The Court views

Commerce's heavy reliance on Wikipedia articles as an indication of the weakness

of Commerce's scope determination.

In addition to being unreliable evidence, the Wikipedia articles cited by Commerce do not adequately explain what a "power take off shaft" is, particularly in the context of a walk-behind lawn mower. See Petitioner's Scope Ruling Request at Atts. 16b, 16c. Attachment 16b describes "power take-off" as one of several methods for taking power from a power source, such as a running engine, and transmitting it to an application such as an attached implement or separate machine. Id. at Att. 16b. This article only mentions the application of this method to other kinds of large machinery, such as tractors, trucks, and jet aircrafts, and the term "secondary" is included once in the context of "semi-permanently mounted power take-offs" on industrial and marine engines, which "typically use a drive shaft and bolted joint to transmit power to a secondary implement or accessory." Id. There is no indication that the R210-S engine includes a "semi-permanently mounted power take-off," and the R210-S is a small engine for lawn mowers—not an industrial or marine engine. See Final Scope Ruling; Petitioner's Scope Ruling Request. Attachment 16c describes a "drive shaft" as a component for transmitting mechanical power, torque, and rotation, which is used to connect other components of a drivetrain that cannot be connected directly because of distance or the need to allow for relative movement between them. Petitioner's Scope Ruling Request at Att. 16c. The article discusses drive shafts in the context of automobiles, motorcycles, trucks, and bicycles. Id. The Wikipedia article includes a short,

general description of "power take-off" drive shafts, describing them as "one method of transferring power from an engine and [power take-off] to vehicle-mounted accessory equipment, such as an air compressor" and "used when there isn't enough space between the engine power take-off and accessory," but fails to mention drive shafts applied to walk-behind lawn mowers or whether a "power take off shaft" may be a secondary drive shaft connected via a gearbox to the horizontal crankshaft as in the R210-S engine. Id.

Because Commerce's definition of a "power take off shaft" is based on these unreliable and irrelevant Wikipedia articles, and is what ultimately supports Commerce's determination that the R210-S engine falls within the scope of the Orders, the Court concludes that Commerce's scope determination on the issue of a "power take off shaft" is not supported by substantial evidence.

The only article relied on by Commerce that is not from Wikipedia is Attachment 17, an article from Pennsylvania State University that discusses power-take off safety in the context of farm tractors and implements. Id. at Att. 17. The article defines the "power take off shaft" as "an efficient means of transferring mechanical power between farm tractors and implements" and discusses the hazards of the shaft associated with farm machinery and safety practices to mitigate the hazards. Id. While this article may be a reliable authoritative source as an academic publication, it is irrelevant because it also does not specifically

discuss a "power take off shaft" in the context of walk-behind lawn mowers or as a secondary shaft connected via a gearbox to a crankshaft. Thus, the Court concludes that the article from Pennsylvania State University does not provide evidentiary support for Commerce's scope ruling.

Defendant and Defendant-Intervenor argue that it was reasonable for Commerce to rely on these articles to determine that a "power take off shaft" can be a vertical drive shaft when it is used as a means to transmit power to the blades and for common industry understanding of the relevant engine components, even though they are not specific to lawn mowers. See Def.'s Resp. at 8; Def.-Inverv.'s Resp. at 8. The Court disagrees. The Wikipedia articles cannot be relied on for the definition of a "power take off shaft" as being a secondary drive shaft attached via a gearbox to a crankshaft, and the academic article does not adequately support Commerce's definition. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951). The Court reviews the substantiality of the evidence "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Deacero S.A. de C.V. v. United States, 37 CIT 1457, 1460–61, 942 F. Supp 2d. 1321, 1325 (2013) (citation and internal quotations omitted). While all three articles generally discuss a "power take off

shaft" as a power transfer system, they fail to support Commerce's determination because they do not address the specific context of lawn mowers and the Wikipedia articles are inherently unreliable as evidentiary sources.

Other record evidence also does not sufficiently support Commerce's determination because the documents do not explain why a horizontal crankshaft cannot be a "power take off shaft" for the R210-S engine. The plain scope language of the Orders does not exclude vertical drive shafts from being a "power take off shaft," but it also does not exclude horizontal crankshafts from being a "power take off shaft." Commerce's reliance on the Petitioner's Scope Ruling Request, the ITC Report, and the Petition do not provide adequate support as to why the transmission of power through a certain shaft would render it a "power take off shaft" if power can go through both the horizontal crankshaft and vertical drive shaft, especially if the vertical drive shaft is a secondary shaft connected to a gearbox. The Parties seem to concede that the power from the engine must at some point be transmitted in a vertical direction in order to reach the lawn mower blades, whether through the vertical drive shaft as an "intermediary" before it reaches a transmission belt (as asserted by Plaintiff) or as the "power take off shaft" that ultimately powers the blades (as argued by Defendant and Defendant-Intervenor). See Pl.'s Br. at 6; Def.'s Resp. at 8; Def.-Interv.'s Resp. at 8; Pl.'s Reply at 9. Defendant-Intervenor asserts that "whether both the crankshaft and the

drive draft are considered [power take off] shafts, or whether only the secondary

drive shaft should be considered the [power take off] shaft is irrelevant," but this

interpretation fails to support Commerce's scope ruling.  Def.-Interv.'s Resp. at 9.

Defendant contends in its brief before the Court that the horizontal crankshaft

cannot transmit power to the blades without the vertical drive shaft because "if the

horizontal crankshaft were the power take off shaft, the lawn mower blades would

be upright, such as in a tiller machine, and not flat on the ground," but Commerce

did not raise this point in its Final Scope Ruling.  Def.'s Resp. at 8 (citing

Petitioner's Scope Ruling Request at 18 (referencing Att. 9 (testimony of

Petitioner's senior vice president before the U.S. International Trade

Commission))); see Final Scope Ruling at 8.

Commerce's reliance on the Petitioner's Scope Ruling Request for general

information on engines designed for use on a lawn mower is not sufficient.  The

Petitioner's Scope Ruling Request states:

> Every other engine designed for use on mowers has only one shaft: a
> vertical crankshaft which also is the [power take off shaft] powering the
> blades.  But this is not necessarily the case. . . .  As is clearly pictured
> in Figure 6 . . . , the modified R210-S has a vertical [drive] shaft
> connected to the gearbox that transmits power straight down the engine
> to the mower blades.

Petitioner's Scope Ruling Request at 24.  Figure 6, depicted below, is a photograph

of the gearbox without its cover, showing that the gears work with the horizontal

crankshaft from the side of the engine and a vertical drive shaft directed to the mower deck of the blades.  Id. at 11.



Figure 6 does not demonstrate that the power is transmitted from the vertical drive shaft directly to the mower blades.  It shows how the shafts are placed, but it is not sufficient evidence to demonstrate that power can only be transmitted from the vertical drive shaft to the blades of the lawn mower.

The Court concludes that Commerce's scope determination is not supported by substantial evidence and not in accordance with law.

## CONCLUSION

For the foregoing reasons, the Court remands Commerce's Final Scope

Ruling as unsupported by substantial evidence and not in accordance with law.

Accordingly, it is hereby

**ORDERED** that Commerce shall file its remand redetermination on or

before April 19, 2024; and it is further

**ORDERED** that Commerce shall file the administrative record on remand

on or before May 3, 2024; and it is further

**ORDERED** that the Parties shall file any comments on the remand

redetermination or before June 17, 2024; and it is further

**ORDERED** that the Parties shall file replies to the comments on or before

July 17, 2024; and it is further

**ORDERED** that the joint appendix shall be filed on or before July 26, 2024.


    /s/ Jennifer Choe-Groves
    Jennifer Choe-Groves, Judge


Dated:    February 20, 2024
      New York, New York